IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GRAHAM L. STOWE,

      Petitioner,      OPINION AND ORDER

v.

                 18-cv-400-wmc

GREGORY VAN RYBROEK,

      Respondent.

---

  Petitioner Graham L. Stowe, through counsel, seeks relief under 28 U.S.C. § 2254 following the denial of his petition for conditional release from the Mendota Mental Health Institute. The magistrate judge entered a report ("R&R") recommending that Stowe's petition be denied. Because petitioner objected to the R&R, the court reviews the matter de novo. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). In doing so, the court may "accept, reject, or modify, in whole or in part" the R&R's "findings or recommendations." *See* 28 U.S.C. § 636(b)(1); *Bowen*, 782 F.2d at 82. For the following reasons, the court will adopt the R&R in part and deny the petition, but grant a certificate of appealability on his facial due process challenge.

BACKGROUND[1]

**A. The charges against Stowe, no contest pleas, and acquittal by reason of mental disease or defect**

  In 2004, Stowe entered his ex-girlfriend's residence and forced her and their

---

[1] The court draws the following facts and background information from the opinion of the Wisconsin Court of Appeals, which affirmed the denial of Stowe's petition for conditional release, and from the state court record, the parties' submissions, and the R&R.

two-year-old daughter out of bed at gunpoint. *State v. Stowe*, 2018 WI App 8, ¶ 2. Stowe then tied up and handcuffed his ex-girlfriend, her minor brother, and her father. *Id.* After that, Stowe beat the father with a baton and doused him with gasoline while repeatedly stating that he was going to take his ex-girlfriend somewhere and force her to watch him commit suicide. *Id.* Stowe also threatened to kill her father and sister. *Id.* Stowe's ex-girlfriend ultimately managed to call 911 and escaped with her daughter after the police arrived. While the police were outside, Stowe took some pills and passed out, after which her father and brother escaped as well. *Id.* When Stowe committed his offenses in 2004, he reported experiencing "auditory hallucinations that were giving him the message to kill himself." *Id.* at ¶ 8. Stowe was also under the influence of drugs at the time. (Dkt. #6-9 at 27-28, 45-46.)

Following his arrest, Stowe was diagnosed with "Major Depressive Disorder with Psychotic Features." *Stowe*, 2018 WI App 8, ¶ 16. He entered no contest pleas to first-degree recklessly endangering safety, intimidation of a victim, felony bail jumping, and three counts of false imprisonment. *Id.* at ¶ 3. Ultimately, the circuit court found Stowe not guilty by reason of mental disease or defect regarding those offenses, and the other charges were dismissed. *Id.* The circuit court then ordered Stowe committed to the Department of Health and Family Services for institutional care for 39.5 years. *Id.*

B. **Stowe's 2007 conditional release and revocation**

In 2007, the state circuit court conditionally released Stowe. *Id.* ¶ 4. In 2009, however, the Department of Health Services successfully petitioned to revoke Stowe's conditional release, alleging that Stowe had repeatedly violated his release conditions,

including by entering a bar where his ex-girlfriend worked. *Id.* Further, in 2013, Stowe "impulsively" escaped from a minimum-security unit at Mendota, ostensibly because he thought staff were going to place him in a more secure unit. *Id.* ¶ 6. After evading capture for three months, Stowe was convicted of escape and sentenced to prison. *Id.* Serving the initial portion of that sentence in state prison, Stowe was then returned to Mendota to serve its extended supervision portion concurrently with his commitment, where he was placed in a maximum-security unit. *Id.*

### C. Stowe's 2016 petition for conditional release and hearing

In February of 2016, Stowe filed another petition for conditional release, which is at issue here. *Id.* ¶ 7. Under Wisconsin Stat. § 971.17 (2015-16), the circuit court "shall grant the petition unless it finds by clear and convincing evidence that the [petitioner] would pose a significant risk of bodily harm to himself . . . or to others or of serious property damage if conditionally released." Without limitation, the statute further instructs that "[i]n making this determination, the court may consider … the nature and circumstances of the crime, the person's mental history and present mental condition, where the person will live, how the person will support himself or herself, what arrangements are available to ensure that the person has access to and will take necessary medication, and what arrangements are possible for treatment beyond medication." *Id.*

Before ruling on Stowe's 2016 petition, court-appointed psychologists, Drs. William Merrick and Kevin Miller, both evaluated Stowe, submitted reports to the circuit court, and testified at a conditional release hearing in state circuit court. (Dkt. ##6-8; 6-9); *Stowe*, 2018 WI App 8, ¶ 7. Stowe's treatment team at Mendota also submitted a letter to

the court, and Mendota staff psychiatrist, Dr. Elliot Lee, testified, along with Stowe's wife. *Id.* Finally, Stowe read a statement to support his petition. *Id.*

The medical experts agreed that Stowe was "no longer diagnosed with the mental illness that [originally] served as the basis for his commitment." (Dkt. #15 at 3.) However, Drs. Merrick and Lee both opined that Stowe currently met the diagnostic criteria for "Other Specific Personality Disorder, with Narcissistic and Antisocial Features." *Stowe*, 2018 WI App 8, ¶ 16. Dr. Merrick further diagnosed Stowe with "Alcohol and Cannabis Use Disorders, both In Sustained Remission, In a Controlled Environment." *Id.* ¶ 18.

Dr. Miller testified that Stowe's narcissism created a risk of him "doing something impulsive," citing his prior escape from Mendota as an example. *Id.* ¶ 17; (dkt. #6-9 at 28.) Dr. Miller also indicated that Stowe's antisocial personality characteristics "are associated with higher risk of violence when compared with typical or average individuals." *Id.* ¶ 17. According to Miller, antisocial behaviors tend to decrease when a person reaches age forty, but Merrick testified that narcissism did not show the same age-related decline. *Id.* ¶ 17; (dkt. ##6-8 at 49; 6-9 at 31.) Indeed, Dr. Merrick explained that personality disorder with narcissistic and antisocial features is "one of the more difficult psychological conditions to treat," typically involving "fairly intensive individual psychotherapy" at least once a week "over the course of years." *Id.* ¶ 25; (dkt. #6-8 at 30.) Given the narcissistic features of Stowe's personality disorder, Dr. Merrick specifically opined that it would "take some time for him to realize that he is not the center of the universe, [and] that other people matter." *Id.* ¶ 25; (dkt. #6-8 at 30.)

Evidence was further submitted at the hearing indicating that Stowe had refused to engage in treatment since returning to Mendota. *Id.* ¶ 26; (dkt. #6-8 at 60-64, 74.) For instance, Stowe's treatment team noted that he had been "minimally involved with treatment on the unit and frequently refuse[d] to meet with the clinical team." *Id.* ¶ 26. As a result, Drs. Merrick and Miller each questioned the appropriateness of Stowe's treatment plan, although Drs. Merrick and Lee also testified that Stowe *had* participated in groups and activities in the past that provide a therapeutic benefit. *Id.* ¶ 26 and n.3; (dkt. #6-8 at 36, 43, 46-47, 67; 6-9 at 18-24.)

Dr. Miller also found significant that Stowe "was using cocaine and methamphetamine in the week prior to" committing his offenses. *Id.* ¶ 18; (dkt. #6-9 at 44.) Miller opined that Stowe's drug use contributed to their commission, and as a result, Stowe presented "a risk of future harm" when "using illicit substances such as cocaine and methamphetamines." *Id.* ¶ 18. Similarly, Miller noted that Stowe used cannabis while in the community following his 2013 escape from Mendota, "demonstrat[ing] across time and situation" that he could not "refrain from substance use." *Id.* ¶ 18; (dkt. #6-9 at 45.) Accordingly, Dr. Miller asserted, "Should Stowe resume illicit substance use on conditional release, he may be more prone to future violent acts." *Id.* ¶ 18 (alterations adopted).

Finally, Drs. Merrick and Miller testified that Stowe's current mental state was one of hopelessness, which posed a risk of danger to both Stowe and others. *Id.* ¶ 19; (*see* dkt. ##6-8 at 21, 47; 6-9 at 29.) Dr. Miller opined that if Stowe received conditional release, it most likely would be revoked, in which case, his "hopelessness would create an elevated risk of impulsive or aggressive behavior, including violence, because Stowe would rather

catch a case and go to prison than return to Mendota." *Id.* ¶ 20. Miller further opined that Stowe's hopelessness put him at risk of suicide, likening his current mental state to that at the time he committed his offenses in 2004, when Stowe felt like he had nothing to lose by killing himself and making others watch. *Id.* Although Dr. Merrick's report stated that Stowe "may" pose a significant risk of harm to himself or others if conditionally released, but he "testified unequivocally" that Stowe would pose such a risk if conditionally released without further treatment. *Id.* ¶ 28 (dkt. #6-8 at 19; *but see* dkt. #6-8 at 47-48.)

### D. Circuit court decision

The circuit court determined that the state had proven by clear and convincing evidence that Stowe would pose a significant risk of bodily harm to himself or others if conditionally released. *Id.* ¶ 8. The circuit court further described Stowe's statement supporting his petition as "consistently disturbing" and reflecting "a distorted self-serving view and presumption of being a victim." *Id.* Accordingly, the circuit court determined that Stowe's view of his situation "did not seem to square in any sense with what ha[d] occurred," and reasoned that his ability to distort reality for his own purpose increased its "perception of risk." *Id.*

The circuit court also relied upon Dr. Merrick's testimony that Stowe "was dangerous to himself or others to a reasonable degree of certainty within his profession," and Dr. Lee's testimony that Stowe refused to engage in treatment. *Id.* ¶ 9. Furthermore, the circuit court relied on Dr. Miller's testimony that Stowe's current mindset was

6

"consistently one of hopelessness," which if released, could "become more manifest," suggesting "a much higher risk as a consequence." *Id.* (alterations adopted).

Finally, the circuit court noted Stowe's "long history" of antisocial behavior, as well as "more recent conduct" that included his escape from Mendota. *Id.* ¶ 10. In particular, the circuit court emphasized that Stowe "was not following the law" and had possessed cannabis during his recent escape. *Id.* In the circuit court's view, the escape was "clearly impulsive" and "consistent with the very kind of conduct that started out in this case in the first place." *Id.* Although Stowe's original offenses were not "so much" its focus, the circuit court found that his more recent misconduct was "not inconsistent with the original offense." *Id.*

E. **Stowe's state court appeal**

On appeal, Stowe contended that the state failed to prove by clear and convincing evidence that, if conditionally released, he would pose a significant risk of bodily harm to himself or others or a significant risk of property damage. *Id.* at ¶ 1. Stowe also argued that § 971.17(4)(d) violated due process "both as applied to him and on its face." *Id.* The Wisconsin Court of Appeals rejected these arguments and affirmed. *See id.* ¶¶ 1, 12-39.

Specifically, Stowe contended that § 971.17(4)(d) violated due process as applied to him because it permitted his continued confinement based solely on a finding of dangerousness even though: (1) he was no longer suffering from the mental disorder that led to his insanity acquittal and; (2) there was no "medical justification" for his continued confinement. *Id.* ¶ 33. Stowe further contended that he was neither receiving any "therapeutic benefit" from his confinement at Mendota because he was not being housed

7

in a facility appropriate for his condition, nor receiving treatment to overcome what allegedly made his dangerous. *Id.*

In making his argument as to the constitutionality of § 971.17(4)(d), Stowe acknowledged that the Wisconsin Supreme Court's decision in *State v. Randall*, 192 Wis. 2d 800 (1995) ("*Randall I*"), read *Foucha v. Louisiana*, 504 U.S. 71 (1992) "to permit the continued confinement of dangerous but sane acquittees in a mental health facility, so long as they are treated in a manner consistent with the purposes of their commitment, *e.g.*, there must be a medical justification to continue holding a sane but dangerous insanity acquittee in a mental health facility." 192 Wis. 2d at 807; *Stowe*, 2018 WI App. 8, ¶ 32. Relatedly, *Randall I* concluded that, "[t]o be constitutionally permissible, the continued confinement of a sane but dangerous insanity acquittee in a mental health facility[ ] must have some therapeutic value." *Id.* at 817. Regardless, the state court of appeals determined that Stowe had forfeited his as-applied challenge by failing to raise it in circuit court. *Stowe*, 2018 WI App 8, ¶¶ 34-37.

Stowe also argued that § 971.17(4)(d) violated due process on its face because it permitted "the continued confinement of an NGI acquittee based on dangerousness alone." *Id.* ¶ 39. The state court of appeals rejected that argument as well, noting that *Randall I* "found a similar, predecessor statute facially valid." *Id.*; *see also* Wis. Stat. § 917.17(2) (1987-88). The Wisconsin Supreme Court denied further review. (Dkt. #14 at 1.)

F.  **Stowe's federal habeas petition**

Stowe filed his federal habeas petition raising as-applied and facial due process challenges to his commitment, arguing that the Wisconsin Court of Appeals unreasonably

8

applied *Foucha* in affirming the circuit court's order denying his conditional release. (Dkt. #1 at 1-3.) In doing so, Stowe concedes that *Foucha* states an insanity "acquittee may be held as long as he is both mentally ill and dangerous, but no longer," 504 U.S. at 77, but argues that state statute "permits the continued confinement of an insanity acquittee in a mental institution based on dangerousness alone, with no link to a present mental disease or defect." (Dkt. #1 at 4.) More specifically, Stowe maintains that since he has "recovered from the mental illness that justified his original insanity commitment," his remaining diagnosis of personality disorder with narcissistic and antisocial traits is excluded "from the definition of 'mental disease or defect'" under Wisconsin law, thus entitling him to immediate release. *Id.* at 5 (quoting Wis. Stat. § 971.15(2)).[2]

Stowe makes the same arguments in his initial brief to this court, and his reply is largely consistent, while failing to address respondent's contention that he was found to have procedurally defaulted, and therefore, effectively waived in state court any as-applied challenge. (*See* dkt. #11 at 7 n.2.) Stowe also separately reiterates his contention that he was not mentally ill, because the state failed to prove that any remaining diagnosed mental condition severely impaired his ability to control his behavior. *Id.* at 13 (citing *Kansas v. Crane*, 534 U.S. 407, 413 (2002)). Finally, Stowe raises a new contention as well: that Wisconsin law does not require a medical justification to deny conditional release. *Id.* at 11 (citing *State v. Randall*, 222 Wis. 2d 53, 62 (Ct. App. 1998) (*Randall II*)).

---

[2] Section 971.15(1) provides that a "person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect the person lacked substantial capacity either to appreciate the wrongfulness of his or her conduct or conform his or her conduct to the requirements of law." As used in chapter 971, "mental disease or defect" does "not include an abnormality manifested only by repeated or otherwise antisocial conduct." *Id.* § 971.15(2).

Nuance aside, the R&R correctly understood Stowe to argue that "*Foucha* clearly established a rule that a State must release an insanity acquittee once he regains sanity or is no longer dangerous." (Dkt. #14 at 22.)  Thus, because the R&R determined that *Foucha* did not stand for this proposition, Magistrate Judge Crocker concluded "*Foucha* did not establish that a dangerous-but-sane insanity acquittee has a [clearly established] right to be conditionally released from a mental health facility that offers treatment designed to overcome that which makes him dangerous."  (*Id.* at 22-29.)³

The R&R also understood Stowe to argue that "even if it was not unreasonable for the [Wisconsin Court of Appeals] to conclude that the State may confine a sane-but-dangerous insanity acquittee so long as the State is medically justified in doing so, Wisconsin's scheme is nonetheless unconstitutional because it presumes medical justification regardless of individual circumstances."  (*Id.* at 29.)  The R&R determined that Stowe forfeited this argument because he first raised it in reply.  (*Id.*)  However, the R&R also determined that, by failing to develop it, Stowe forfeited the argument that the state failed to prove that he had a mental condition severely impairing his ability to control his behavior.  (*See id.* at 30-31.)⁴

In his objections, Stowe now renews his contention that *Foucha* established an insanity acquittee may be held *only* if he is found both mentally ill *and* dangerous.  (Dkt. #15 at 5-6.)  Thus, Stowe argues that the R&R improperly relied on Justice O'Connor's

---

³ Although Justice O'Connor purported to join the majority opinion, the R&R interpreted the five-Justice majority opinion by reference to her separate concurrence.  (*Id.* at 22-27.)

⁴ Alternatively, the R&R did not understand Stowe to be "pursuing any claim based on 'lack of therapeutic value' in this proceeding."  (*Id.* at 19 n.2.)

concurrence in arriving at *Foucha's* basic holding or, in the alternative, that her concurrence aligns with the majority decision. (*See id.* at 7-9, 14-16.) Finally, Stowe contends that the facts in *Foucha* and in this case are materially indistinguishable. (*Id.* at 7.)

At the same time, Stowe does *not* object to the R&R's determinations that: (1) his as-applied due process claim is procedurally defaulted; (2) he forfeited the argument that Wisconsin law impermissibly presumes a medical justification regardless of individual circumstances; and (3) he had failed to assert any claim based on a lack of therapeutic value in his current treatment.

OPINION

Federal courts may grant habeas relief only if the state court's denial of relief "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)-(2). A state court's adjudication is "contrary to" clearly established Supreme Court precedent if the court either: (1) reaches a conclusion on a question of law opposite to that reached by the Supreme Court; or (2) decides a case differently than the Supreme Court has on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under § 2254(d)(1)'s "unreasonable application" clause, courts may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the case. *Id.* at 413.

For the application to be unreasonable, therefore, a state prisoner "must show that the state court's decision is so obviously wrong that its error lies beyond any possibility for

11

fairminded disagreement." *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (per curiam). Similarly, for a state court's factual finding to be unreasonable, there must be no possibility of reasonable agreement with the finding. *See Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015) (a reasonable disagreement about the finding in question is insufficient to merit habeas relief); *Wood v. Allen*, 558 U.S. 290, 301-02 (2010). Under either of these § 2254(d) standards, however, courts look to "the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc), and review is limited to the state-court record. *Shoop v. Twyford*, 142 S. Ct. 2037, 2043-44 (2022); *Dunn v. Neal*, 44 F.4th 696, 702 (7th Cir. 2022). Moreover, the petitioner bears the burden to show an error under § 2254(d), as well as the burden of proof more generally. *Westray v. Brookhart*, 36 F.4th 737, 746 (7th Cir. 2022); *Quintana v. Chandler*, 723 F.3d 849, 854 (7th Cir. 2013). With these principles in mind, the court turns to Stowe's objection to the R&R.

As an initial matter, notwithstanding some language in his submissions to Magistrate Judge Crocker to that effect, Stowe denies arguing that *Foucha* clearly established a rule that a state *must* release an insanity acquittee once he regains sanity *or* is no longer dangerous. Instead, Stowe clarifies in his objections that he reads *Foucha* to hold that an insanity acquittee may be held only if he is mentally ill *and* dangerous.[5] While appearing logically equivalent, the second is perhaps a more straightforward articulation of *Foucha*'s holding, 504 U.S. at 77, particularly as repeatedly spelled out in controlling

---

[5] Stowe has not argued that he is mentally ill but not dangerous.

Seventh Circuit opinions. *See Adams v. Bartow*, 330 F.3d 957, 961 (7th Cir. 2003) ("[T]he general rule we take from *Foucha* is simply that an insanity acquittee may be held for only as long as he is still mentally ill; his dangerous propensities alone do not justify continued confinement."); *Martin v. Bartow*, 628 F.3d 871, 874 (7th Cir. 2010) ("Martin's constitutional right to due process limits his civil commitment to the period during which he is both mentally ill and dangerous, but no longer."); *McGee v. Bartow*, 593 F.3d 556, 576 (7th Cir. 2010) (stating that *Foucha* "made clear . . . that dangerousness without proof of some underlying mental condition is not sufficient to sustain an involuntary commitment"). *Cf. Kansas v. Hendricks*, 521 U.S. 358 (1997) ("A finding of dangerousness, standing alone, is ordinarily not a sufficient ground upon which to justify indefinite involuntary commitment. We have sustained civil commitment statutes when they have coupled proof of dangerousness with the proof of some additional factor, such as a 'mental illness' or 'mental abnormality.'").[6]

That said, Stowe does not object to the R&R's determination that his as-applied due process challenge is procedurally defaulted. Therefore, the main issue in this case, which has gotten lost somewhat in the parties' submissions, is whether the Wisconsin

---

[6] To the extent that the R&R did not unequivocally read *Foucha* this way by reliance on Justice O'Connor's concurrence to discern its holding (as have some other lower courts), the Seventh Circuit decisions cited above establish that the state must show both that an insanity acquittee is mentally ill and dangerous to deny him conditional release. Indeed, Justice O'Connor's concurrence and the majority decision are reconcilable, but the court declines to use the concurrence to interpret the majority decision. *See Vasquez v. Hillery*, 474 U.S. 254, 262 n.4 (1986) (noting when "one may discern a single holding of the Court in cases in which no opinion on the issue in question has garnered the support of a majority."). Accordingly, to the extent the R&R reached different conclusions, however nuanced, the court declines to adopt those portions of the R&R.

Court of Appeals unreasonably applied clearly established federal law or made unreasonable factual findings in rejecting Stowe's facial unconstitutional challenge to Wis. Stat. § 917.17(4)(d). Specifically, Stowe contends that this provision permits insanity acquittees to be confined based on dangerousness alone. In support, he notes that subsection (4)(d) states that the circuit court may deny a conditional release petition if "it finds by clear and convincing evidence that the person would pose a significant risk of bodily harm to himself or herself or to others or of serious property damage if conditionally released." However, Stowe's narrow reading overlooks other, relevant language in the same statutory subsection. *See Brach v. Amoco Oil Co.*, 677 F.2d 1213, 1220 (7th Cir. 1982) ("In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provision of the whole law . . . "). Again, specifically, the statute states that: "In making this determination, the court may consider, without limitation because of enumeration, the nature and circumstances of the crime, the person's mental history and *present mental condition*, where the person will live, how the person will support himself or herself, what arrangements are available to ensure that the person has access to and will take necessary medication, and what arrangements are possible for treatment beyond medication." § 917.17(4)(d) (emphasis added).

Thus, on its face, § 917.17(4)(d) empowers state circuit courts at minimum to consider a detainee's mental condition in deciding whether to conditionally release him. Even if one could read § 917.17(4)(d) to permit denying conditional release based on dangerousness alone, therefore, Stowe has *not* shown the absence of *any* "set of circumstances [ ] under which the statute would be valid," as a party normally must to

14

prevail on a facial challenge. *United States v. Hansen*, 143 S. Ct. 1932, 1939 (2023) (emphasis omitted).[7]

In essence, Stowe seems to be contending that by denying his facial challenge under *Randall I*, the Wisconsin Court of Appeals determined that § 917.17(4)(d) permits denying his conditional release based on dangerousness alone, but that is not this court's reading. To the contrary, *Randall I* "read *Foucha* to permit the continued confinement of dangerous but sane acquittees in a mental health facility, so long as they are treated in a manner consistent with the purposes of their commitment, *e.g.*, there must be a *medical justification* to continue holding a sane but *dangerous* insanity acquittee in a mental health facility." 192 Wis. 2d at 807 (emphases added). In other words, one can reasonably read *Randall I* to require a showing of both mental illness and dangerousness. While *Randall I*'s description of its own holding admittedly varies somewhat, as do others' readings, none necessarily precludes this court's understanding of § 971.17(4)(d)'s application to Stowe on its face *or* in practice. And again, because Stowe has not met his burden of showing that *Randall I* unreasonably applied *Foucha*, he has not shown that the Wisconsin Court of Appeals unreasonably applied clearly established federal law in rejecting his facial due process

---

[7] Stowe's contention that his right to procedural due process was violated because § 971.17(4)(d) does not expressly require a "current, qualifying mental health condition" fails for the same reason. In any case, this contention was too conclusory to warrant full federal habeas review. *See McFarland v. Scott*, 512 U.S. 849, 856 (1994) (Section 2254 petitions must meet "heightened pleading requirements.").

challenge.[8]

Next, Stowe contends that *Foucha* is "materially indistinguishable" from his case. In particular, Stowe asserts that, like him, "because Foucha once committed a criminal act and now has an antisocial personality that sometimes leads to aggressive conduct, a disorder for which there is no effective treatment, he may be held indefinitely." 504 U.S. at 82. In *Foucha*, however, the State of Louisiana "*conceded* that Foucha was not mentally ill," *Brown v. Watters*, 599 F.3d 602, 613 (7th Cir. 2010) (emphasis in original), something the State of Wisconsin has not conceded, nor does it contend that Stowe may be held indefinitely. *See Randall I*, 192 Wis. 2d at 808-09 ("[T]he commitment may not exceed the maximum term of imprisonment which could have been imposed for the offenses charged."); Wis. Stat. § 917.17(1)(b).

Nevertheless, Stowe points out that, like Foucha, he has recovered from the mental illness that justified his original insanity commitment, while acknowledging that some of the experts who testified at his conditional release hearing diagnosed him with an "antisocial personality disorder with narcissistic and antisocial traits," as well as alcohol and cannabis abuse disorders, all of which he contends Wisconsin law excludes these conditions from the definition of "mental disease or defect" under Wis. Stat. § 971.15(2). Stowe has identified no authority, much less clearly established federal law, holding that these conditions cannot qualify as mental illnesses for purposes of substantive due process.

---

[8] Relatedly, Stowe contends that *State v. Randall*, 222 Wis. 2d 53, 62 (Ct. App. 1998) (*Randall II*), a later Wisconsin Court of Appeals decision, shows that Wisconsin law does not require individualized medical justification to deny conditional release. However, Stowe did not object to the R&R's determination that he forfeited this argument by raising it for the first time in reply, and the court will not consider this argument now.

Indeed, the Supreme Court has stated that "the term 'mental illness' is devoid of any talismanic significance." *Hendricks*, 521 U.S. at 359. "Not only do psychiatrists disagree widely and frequently on what constitutes mental illness, but the Court itself has used a variety of expressions to describe the mental condition of those properly subject to civil confinement." *Id.* (citation omitted).

Ultimately, therefore, Stowe argues that he is no longer mentally ill because the state failed to provide "proof of serious difficulty in controlling [his] behavior." *Crane*, 534 U.S. at 413. However, the R&R correctly determined that he forfeited this very argument by failing to develop it. In his objections, Stowe disputes this finding, arguing that *Hendricks* and *Crane* show "his personality disorder could [not] qualify as a constitutionally-sufficient mental condition." (Dkt. #15 at 16 n.11.) The court need not decide whether Stowe forfeited this argument because it supports only his as-applied due process challenge, which as noted above *was* procedurally defaulted. Regardless, the record permits a reasonable finding that Stowe had mental conditions that caused him serious difficulty in controlling his behavior. *Cf. Adams*, 330 F.3d at 963 (state court reasonably applied *Hendricks/Crane* standard based on testimony that detainee presented a substantial risk of reoffending *and* his "failures under court-ordered supervision, denial of responsibility, [and] refusal to participate in sexual assault treatment programs," among other considerations). While Stowe selectively cites from the record to argue that his diagnoses and violations on release are not as extreme as *Adams* (dkt. ##7 at 23; 11 at 13), that disagreement does not warrant federal habeas relief. *See Wood*, 558 U.S. at 301 ("[E]ven if reasonable minds reviewing the record might disagree about the finding in question, on

17

habeas review that does not suffice to supersede the trial court's determination." (alterations adopted)); *cf. Varner v. Monohan*, 460 F.3d 861, 864 (7th Cir. 2006) (suggesting that the *Hendricks/Crane* serious-difficulty standard is not a "'clearly established' rule that the state judiciary could transgress."). Indeed, Stowe does not object to the R&R's determination that he is not pursuing a claim that his treatment at Mendota lacks therapeutic value.[9]

Finally, because Stowe seeks relief under § 2254, he may appeal this order only if he obtains a certificate of appealability. The court may issue a certificate of appealability only if Stowe makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Here, the court will grant Stowe a certificate of appealability as to his facial due process claim because he has "demonstrate[d] that reasonable jurists would find the [ ] court's assessment of [his] claim[ ] debatable." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also* 28 U.S.C. § 2253(c)(2). By contrast, the court will deny a certificate of appealability as to Stowe's defaulted, as-applied due process claim because jurists of reason would not debate that default. *Id.*

---

[9] Even if he were, this claim would be procedurally defaulted because it supports only his as-applied challenge. (*See* dkt. #11 at 13-14.) "Due process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." *Foucha*, 504 U.S. at 79. Under the limited review that § 2254(d) dictates, the court cannot say that the record precludes a reasonable finding that Stowe's commitment at Mendota is therapeutic, particularly considering his refusal to participate in treatment. However, the circuit court expressed concern that Stowe was being "warehous[e]d" (dkt. #6-9 at 101), and the court agrees with the R&R's observation that Stowe's allegation that his treatment lacks therapeutic value, though underdeveloped, is "concerning" (dkt. #14 at 29 n.4). Because § 2254(d) bars relief in this case, however, no evidentiary hearing is warranted. *Stechauner v. Smith*, 852 F.3d 708, 721-22 (7th Cir. 2017). Of course, this would not preclude Stowe from pursuing an as-applied challenge should his diagnoses or behavior improve.

ORDER

IT IS ORDERED that:

1) The report and recommendation (dkt. #14) is ADOPTED in part and MODIFIED in part as provided above.

2) Petitioner's objections (dkt. #15) are OVERRULED.

3) Petitioner's habeas petition (dkt. #1) is DENIED.

4) A certificate of appealability is GRANTED as to petitioner's facial due-process claim but DENIED as to his as-applied due process claim.

5) The clerk of court is directed to enter final judgment in favor of respondent.

Entered this 6th day of November, 2023.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge